■ YVONNE CARLO, Respondent, v LONG ISLAND COLLEGE HOSPITAL, Appellant.—In a medical malpractice action to recover damages for personal injuries, etc., the defendant Long Island College Hospital appeals from an order of the Supreme Court, Kings County (Pizzuto, J.), dated January 25, 1990, which granted the plaintiff's motion to set aside a jury verdict in its favor and granted a new trial.

Ordered that the order is affirmed, with costs.

This medical malpractice action arose from alleged departures by the defendant hospital from the applicable standards of prenatal and neonatal care in treating the plaintiff, which she asserts proximately caused her cerebral palsy. The plaintiff's mother was suffering from a diabetic condition at the time of the plaintiff's birth in 1967. At the time of the trial in 1989 the mother was deceased. A medical student (now a doctor), who attended the delivery, the attending pediatrician and the nursery staff nurse testified at the trial. They had no independent recollection of events but relied on their notes contained in the hospital records admitted into evidence. The plaintiff essentially relied on these hospital records detailing her treatment to demonstrate that the hospital had deviated from good medical standards and practice. It was conceded by

the experts for both parties that the plaintiff's symptoms following her birth were related to her mother's diabetic condition. However, the plaintiff alleged that as a result of the hospital's failure to monitor her symptoms of low blood sugar (hypoglycemia) and respiratory distress (hypoxia), she suffered irreversible brain injury. The defendant conceded that the plaintiff did suffer an injury to the brain after birth, and, essentially, its defense was that the injury occurred because of the mother's diabetic condition and the plaintiff's prematurity, which were beyond medical control.

At the conclusion of a lengthy trial, the jury responded in the defendant hospital's favor to six interrogatories addressed to specific allegations of deviations by the hospital from accepted medical practice in the care of the mother and of the plaintiff at the time of her birth. On the plaintiff's motion, the trial court set aside the verdict and granted the plaintiff a new trial. We affirm.

Preliminary, we note that in exercising its appellate review functions, we are cognizant of the trial court's unique opportunity to observe the events at the trial, and thus to properly assess the evidence. However, the trial court may only set aside a jury verdict if the verdict is not supported by a fair interpretation of the evidence (see, Nicastro v Park, 113 AD2d 129, 136-137).

Having reviewed the trial record which includes the hospital records, we are satisfied that it was so replete with evidence of apparent deviations by the hospital that it is clear the trial court did not improvidently exercise its discretion in setting aside the verdict.

This is not a case in which the jury was faced with sharply conflicting expert testimony on the negligence issue which it resolved in the defendant's favor (cf., De Luca v Kameros, 130 AD2d 705, 706; Cohen v Bugatch, 121 AD2d 426). At the trial, it was undisputed that the likelihood of an infant born of a diabetic mother developing the symptoms which the plaintiff developed was known to the medical profession in 1967. All the experts were also in agreement that it was important to control the mother's blood sugar levels. But here there was no monitoring of the mother's diabetic condition after she was admitted for an early delivery, and no specialist was available at the birth. Further, the experts concurred that it was generally known that the corrective treatment for the newborn plaintiff's low blood sugar was the administration of glucose, which, even in large amounts, would not harm an infant. Similarly, it was known that the plaintiff's cyanosis

(blue color) was caused by lack of oxygen which could be corrected by increased oxygen levels. Despite medical knowledge at the time of the possible adverse effects of permitting these symptoms to continue over period of time, the hospital records demonstrate that the corrective treatments were not promptly administered to the plaintiff.

In fact, at the trial, the only real conflict between the experts was whether the existence of these conditions was the proximate cause of the injury to the plaintiff's brain. However, in light of the jury's findings that no negligence had occurred, the issue of proximate cause was not reached.

We conclude that the preponderance of the evidence in favor of the plaintiff on the issue of fault was so great that the verdict in favor of the defendant hospital could not have been reached upon any fair interpretation of the evidence (see, Olsen v Chase Manhattan Bank, 10 AD2d 539, 544, affd 9 NY2d 829; Rosetti v Campanella, 118 AD2d 552; Nicastro v Park, 113 AD2d 129, supra). Kunzeman, J. P., Kooper, Sullivan and O'Brien, JJ., concur.